UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x

In re SOUNDVIEW ELITE LTD., et al.,        :       1:14-cv-8615-GHW

                   Debtors,        :

-----------------------------------------------------------------x
CORINNE BALL, as Chapter 11 Trustee of
SOUNDVIEW ELITE LTD.,            :

                   Plaintiff,      :

    -against-                :

SOUNDVIEW COMPOSITE LTD.,     :

                  Defendant    :
-----------------------------------------------------------------x

## **APPEAL BRIEF OF APPELLANT ALPHONSE FLETCHER, JR.**

SHER TREMONTE LLP
80 Broad Street, Suite 1301
New York, NY 10004
(212) 202-2638
(212) 202-4156 (fax)
rknuts@shertremonte.com

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................ ii

PRELIMINARY STATEMENT ................................................................................ 1

STATEMENT OF FACTS ......................................................................................... 2

  A. Background ...................................................................................................... 2

  B. The Motion For A Temporary Restraining Order
Concerning Composite's Cash Funds ................................................................ 3

  C. The Commencement Of An Adversary Proceeding
Concerning Composite's Cash Funds ................................................................ 4

  D. The Trustee's Motion For Summary Judgment
Concerning Composite's Cash Funds ................................................................ 7

  E. The August Application For Court Approval Of
An Additional Transfer Of Composite's Cash Funds ....................................... 8

  F. The September 3rd Conference And The September 23rd Order ........................... 10

ARGUMENT ........................................................................................................... 16

I. The Bankruptcy Court Erroneously Ordered "Restraints"
On Composite's Cash Funds .................................................................................. 16

II. The Bankruptcy Court Erroneously Issued Rulings Without Sufficient Prior
Notice Concerning The Alleged Waiver Of The Attorney-Client Privilege,
The Payment Of Legal Fees and The Quality Of Legal Services ...................................... 17

III. The September 23rd Order Erroneously Required Fletcher and
Richcourt To Produce Documents and Information Without Any Prior
Notice, Motion or Ruling On Any Request For Such Documents and Information ........ 19

CONCLUSION ........................................................................................................ 20

# TABLE OF AUTHORITIES

Page

**Cases**

*Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 546 (1985) ................................... 17

*Grupo Mexicano de Desarollo, S.A. v. Alliance Bond Fund, Inc.*, 527 U.S. 308,
119 S. Ct. 1961 (1999) ................................................................................................ 16-17

*Kaley v. United States*, 134 S. Ct. 1090, 1114 (2014) ..................................................... 17

*LaChance v. Erickson*, 522 U.S. 262, 266 (1995) ........................................................... 17

*Lugo v. Keane*, 15 F.3d 29, 30 (2d Cir. 1994) ................................................................. 17


**Rules and Statutes**

Fed. R. Civ. P. 65 ............................................................................................................. 16

Fed. R. Bankruptcy P. 7065 ............................................................................................. 16

## PRELIMINARY STATEMENT

This brief is submitted on behalf of non-party Alphonse Fletcher, Jr. ("Fletcher") in support of Fletcher's appeal from an order issued by the United States Bankruptcy Court for the Southern District of New York (Gerber, J.) (the "Bankruptcy Court") on September 23, 2014 (the "September 23rd Order") against Fletcher and others.  The Order must be reversed because the Bankruptcy Court repeatedly violated Fletcher's rights – and the rights of others, including defendant Soundview Composite, Ltd. ("Soundview Composite") -- to even minimal due process in connection with a series of rulings that culminated in the September 23rd Order.

As described in detail below, the Bankruptcy Court has wrongfully asserted power over certain assets of non-debtor Soundview Composite and the Bankruptcy Court then compounded that error by: (a) ordering Fletcher, *sua sponte*, to produce certain financial information within one day of the Court's declaration that such information be produced even though such information had not been requested via motion or subpoena by any party in the adversary proceeding; (b) ordering Fletcher and non-party Richcourt USA, Inc. ("Richcourt") to produce financial documents and additional information without any prior motion or subpoena for such information in the adversary proceeding; (c) decreeing without sufficient basis that Fletcher and Soundview Composite had waived permanently the attorney-client privilege for all communications with its then-current counsel ("Composite's Then-Counsel"); and (d) ordering Soundview Composite to pay $50,000 to Composite's Then-Counsel even though a dispute had arisen between Soundview Composite and Composite's Then-Counsel regarding the quality of legal services provided by Composite's Then-Counsel.  In substance, the Bankruptcy Court has treated Fletcher and Soundview Composite as if they had petitioned the Bankruptcy Court for

relief and had thereby subjected themselves to whatever order the Bankruptcy Court deemed appropriate without any meaningful opportunity to be heard concerning such rulings.

For the reasons described below, this Court should reverse the September 23rd Order in its entirety, other than the portion of the September 23rd Order that granted the motion of Composite's Then-Counsel to withdraw from continued representation of Soundview Composite.

## STATEMENT OF FACTS

A.    Background

In September 2013, Soundview Elite, Ltd. ("Soundview Elite") filed a Chapter 11 petition for relief with the Bankruptcy Court.[1]  Proceedings then commenced in the Bankruptcy Court to determine whether Soundview Elite should be subject to reorganization proceedings in the United States or other reorganization proceedings that had been commenced in the Cayman Islands after the U.S. Chapter 11 filing.  Peter Anderson and Matthew Wright, who had been appointed in the Cayman Islands as the Joint Official Liquidators for Soundview Elite (the "JOLs"), sought to dismiss the U.S. bankruptcy reorganization proceeding.  In addition, in November 2013, the United States Trustee for Region 2 (the "US Trustee") filed a motion in the Bankruptcy Court for appointment of a Chapter 11 Trustee for Soundview Elite.  The Bankruptcy Court held hearings on these procedural issues in December 2013.

At all relevant times, Soundview Elite is believed to have owned certain "Class H" securities issued by Soundview Composite.  However, Soundview Composite has not been the subject of any bankruptcy reorganization proceedings either in the Bankruptcy Court or the Cayman Islands.  As of January 2014, approximately $3.8 million in funds were held by

---

[1]    *In re Soundview Elite, Ltd.*, Case No. 13-13098 ("Chapter 11 Proceeding"), Docket No. 1.

[2]    Chapter 11 Proceeding, Docket No. 150.

[3]    Chapter 11 Proceeding, Docket No. 151.

[4]    Chapter 11 Proceeding, Docket No. 157, p. 8.

[5]    Chapter 11 Proceeding, Docket No. 157, p. 9.

[6]    Chapter 11 Proceeding, Docket No. 157, p. 13.

Wilmington Trust Co. ("Wilmington Trust") in an account for Soundview Composite (the "Composite's Cash Funds").  Those funds had been the subject of an interpleader action commenced in Delaware state court by Wilmington Trust.  On January 17, 2014, the Delaware state court issued an order that dismissed the portion of the interpleader action that concerned Composite's Cash Funds, thereby allowing Soundview Composite to instruct Wilmington Trust regarding the disposition of those funds.

At the time that the Delaware state court issued its order, there was no dispute between Soundview Elite and Soundview Composite that Soundview Elite had owned certain Class H securities.  However, substantial fact issues existed concerning: (a) whether or not Soundview Elite had properly sought to redeem those Class H securities; and (b) if so, (i) the exact amount that would be owed by Soundview Composite to Soundview Elite; (ii) when Soundview Composite would be required to pay that amount to Soundview Elite; and (iii) whether any amounts owed would be paid in cash or securities in accordance with the documents that governed Soundview Elite's ownership of the Class H securities.

B.     The Motion For A Temporary Restraining
       Order Concerning Composite's Cash Funds

On January 20, 2014, the JOLs filed an "emergency" motion for a temporary restraining order with the Bankruptcy Court.[2]  The JOLs sought a TRO that would  have prohibited Soundview Composite from using Composite's Cash Funds for any purpose, other than transferring 100% of those monies to Soundview Elite, until such time as the Bankruptcy Court ruled upon the JOLs' motion to dismiss the U.S. bankruptcy proceeding concerning Soundview Elite.  Counsel for Soundview Elite in the U.S. Bankruptcy proceedings filed a letter with the Bankruptcy Court the following morning in which counsel for Soundview Elite proposed various

---

[2]       Chapter 11 Proceeding, Docket No. 150.

alternatives to the TRO sought by the JOLs, including a possible consent order regarding the disposition of Composite's Cash Funds.[3]

On January 21, 2014, the Bankruptcy Court held a telephonic hearing concerning the TRO sought by the JOLs.  During that hearing, the Bankruptcy Court recognized that the TRO sought by the JOLs raised substantial legal issues, including the legal basis on which the Bankruptcy Court could issue an injunction "to restrain a transfer from one nondebtor [Wilmington Trust] to another [Soundview Composite]."[4]  Soundview Composite was not represented at that hearing.  However, counsel for Soundview Elite in the U.S. bankruptcy proceedings made the following oral representation to the Bankruptcy Court: "Soundview Composite will do nothing to move those funds absent the presentation of an acceptable consent order to the Court."[5]  The Bankruptcy Court stated that the representation by counsel for Soundview Elite meant that consent of all parties had been obtained "to preserve the status quo exactly as it is for the time being" and, therefore, the JOLs' motion for a TRO was moot.[6]  Both the Bankruptcy Court and counsel for Soundview Elite made comments during the January 21st conference that the status quo would be maintained on consent for "a few days" because the Bankruptcy Court anticipated issuing a decision on the JOLs motion to dismiss very shortly after that conference.[7]

Two days later, on January 23, 2014, the Bankruptcy Court issued a Bench Decision that ruled upon various procedural issues but did not rule on the JOLs' motion for a TRO because it

---

[3]     Chapter 11 Proceeding, Docket No. 151.

[4]     Chapter 11 Proceeding, Docket No. 157, p. 8.

[5]     Chapter 11 Proceeding, Docket No. 157, p. 9.

[6]     Chapter 11 Proceeding, Docket No. 157, p. 13.

[7]     Chapter 11 Proceeding Docket No. 157, pp. 11, 13.

had been rendered moot at the January 21st conference.[8]  In that Bench Decision, the Bankruptcy Court granted the motion of the US Trustee for appointment of a Chapter 11 Trustee for Soundview Elite.  The JOLs did not renew their motion for a TRO after the Bench Decision.  In February 2014, Corinne Ball was appointed as Chapter 11 Trustee (the "Soundview Elite Trustee") and the Jones Day law firm was retained as counsel for the Soundview Elite Trustee.

C.     The Commencement Of An Adversary
       Proceeding Concerning Composite's Cash Funds

 In April 2014, the Soundview Elite Trustee commenced an adversary proceeding against Soundview Composite in which the Soundview Elite Trustee sought a "turnover order" concerning 100% of Composite's Cash Funds (the "Turnover Adversary Proceeding").[9]  In that complaint, the Soundview Elite Trustee alleged that Soundview Elite had properly transmitted a redemption request concerning the Class H securities issued by Soundview Composite, that Soundview Composite owed Soundview Elite a sum of money in excess of Composite's Cash Funds, and, therefore, Soundview Composite should be ordered to pay all of Composite's Cash Funds to Soundview Elite.

In response to the Turnover Adversary Proceeding, Soundview Composite retained legal counsel to represent it in that proceeding.  Soundview Composite instructed Wilmington Trust to transfer $25,000 from Composite's Cash Funds to Composite's Then-Counsel in connection with that representation.  Counsel for Wilmington Trust informed counsel for the Soundview Elite Trustee of the instruction to transfer funds and counsel for the Soundview Elite Trustee requested a telephonic conference with the Bankruptcy Court.  That telephonic conference was held on

---

[8]     Chapter 11 Proceeding, Docket No. 156.
[9]     Corinne Ball, As Chapter 11 Trustee of Soundview Elite Ltd. v. Soundview Composite Ltd., Adversary Proceeding No. 14-01923 (the "Adversary Proceeding"), Docket No. 1.

April 15, 2014 and Soundview Composite was represented at that conference by Composite's

Then-Counsel, who was to receive the $25,000 transfer.[10]

During the April 15th conference, counsel for the Soundview Elite Trustee asked the

Bankruptcy Court to take action to prevent the transfer of $25,000 to Composite's Then-Counsel.

The Bankruptcy Court refused to issue any such order.  Instead, the Bankruptcy Court stated as

follows:

> "I do not have a basis, at this time, in this phone call, to enjoin the payment by
> Wilmington Trust of the $25,000."[11]

> "[I]n the absence of a motion for an attachment, a TRO, any other provisional
> remedy, or an expedited motion for summary judgment, I can't do anything to
> restrain the payment of the $25,000 now.  Now, if turns out that Wilmington Trust
> is asked to disburse any more than $25,000, after Mr. Levine represented to me
> that he knows of no plans to ask Wilmington Trust to do any more, that would
> make me ballistic.  But I have limitations imposed upon me as matters of due
> process and procedure."[12]

 The Bankruptcy Court ended the April 15th conference by asking counsel for Wilmington Trust,

"as a courtesy to this court and to all of the parties on this call, that you advise me if it turns out

that your client is asked to expend any more than $25,000."  Counsel for Wilmington Trust

agreed to provide such notice.[13]  The Bankruptcy Court issued no order during the April 15th

conference.

---

[10]     Adversary Proceeding, Docket No. 6.

[11]     Adversary Proceeding, Docket No. 6, p. 29.

[12]     Adversary Proceeding, Docket No. 6, p. 30.

[13]     Adversary Proceeding, Docket No. 6, pp. 32-33.

D.   The Trustee's Motion For Summary Judgment
     Concerning Composite's Cash Funds

In May 2014, the Soundview Elite Trustee filed a motion for summary judgment concerning her claims for relief in the Turnover Adversary Proceeding.[14]  In response, Soundview Composite filed papers in opposition to that motion and argued, *inter alia*, that genuine issues of material fact precluded the Bankruptcy Court from granting summary judgment on the claims in the Turnover Adversary Proceeding.[15]

On June 26, 2014, the Bankruptcy Court heard oral argument on the motion for summary judgment. At the very end of that hearing, the Bankruptcy Court stated as follows:

> "The restraints on disposition of the remaining funds [Composite's Cash Funds after payment of $25,000 to Composite's Then-Counsel in April 2014] remain in effect."[16]

This statement was not explained further by the Bankruptcy Court or questioned by counsel for the parties at that hearing.  In fact, no "restraints on disposition of the remaining funds" then existed.  As noted above, at the April 15th hearing, the Bankruptcy Court expressly stated that it could not order any such restraints unless the Soundview Elite Trustee filed a motion for such relief and provided Soundview Composite with the opportunity to contest such a motion.  At the time of the June 26th hearing concerning the motion for summary judgment, the Soundview Elite Trustee had not filed any motion for a pre-judgment restraint on Composite's Cash Funds.  To the extent that the Bankruptcy Court's comment at the end of the June 26th hearing constituted an "order" that restrained Composite's Cash Funds in any way, the "order" was issued without prior notice and without any motion for such an "order" by any party.

---

[14]   Adversary Proceeding, Docket No. 11.

[15]   Adversary Proceeding, Docket No. 21.

[16]   Adversary Proceeding, Docket No. 24, p. 90.

E.    The August Application For Court Approval Of
      <u>An Additional Transfer Of Composite's Cash Funds</u>

In light of the Bankruptcy Court's warning at the April 15th hearing that any non-public request transmitted by Soundview Composite to Wilmington Trust to transfer additional amounts from Composite's Cash Funds would make the Bankruptcy Court "ballistic", Composite's Then-Counsel requested a status conference in early August 2014 to discuss an additional transfer of Composite's Cash Funds.  In the letter requesting the conference, Composite's Then-Counsel requested Bankruptcy Court approval for certain payments of legal fees in the aggregate amount of $100,000, including payment of $50,000 to Composite's Then-Counsel.[17]

On August 8, 2014, the Bankruptcy Court held a status conference in response to the request from Composite's Then-Counsel.  Unfortunately, the statements made by counsel for the parties and the Bankruptcy Court during that conference, in the aggregate, constituted a train wreck of miscommunication, ambiguity, and error.  First, counsel for the Soundview Elite Trustee, counsel for Wilmington Trust and the Bankruptcy Court made various statements that assumed that "restraints" on Composite's Cash Funds then existed even though no motion had ever been filed by the Soundview Elite Trustee to apply for "restraints" and the Bankruptcy Court acknowledged at the April 15th hearing that the Bankruptcy Court was powerless to impose such "restraints" in the absence of such a motion.[18]  Composite's Then-Counsel did nothing to correct those statements at the August 8th conference.

Second, in an effort to fashion a compromise concerning the parties' conflicting positions, counsel for the Soundview Elite Trustee proposed that the Court allow a payment to Soundview Capital Management, Ltd. ("Soundview Capital Management"), the investment manager for both

---

[17]    Adversary Proceeding, Docket No. 25.

[18]    Adversary Proceeding, Docket No. 28 (*see, e.g.*, pp. 6-7, 13, 23).

Soundview Elite and Soundview Composite, in the same $100,000 amount that had been the subject of the approval request made by Composite's Then-Counsel -- but only in exchange for a release of a claim made by Soundview Capital Management against "the estate" – i.e., Soundview Elite.[19]  While certainly creative, no counsel formally representing Soundview Capital Management was present at the August 8th conference and no notice had been given to anyone regarding the possible settlement of Soundview Capital Management's claim against the estate of Soundview Elite.  Worse, the Bankruptcy Court then described that tentative settlement offer by counsel for the Soundview Elite Trustee as "consent" to "release from the injunction $100,000 on account of otherwise [valid] claims *against Composite.  That money could be used* and *should be used* to pay legal expense, that are under discussion here, to meet the SEC's legitimate investigatory needs."[20]  The Bankruptcy Court further described the release of the $100,000 as "on account of the creditor obligation – and I understand that the creditor obligation is to Fletcher entities; it is to insiders . . ."[21]  But the Bankruptcy Court failed to identify the entity that owed the "creditor obligation", the source of the "creditor obligation" or the balance due on the "creditor obligation."  None of the counsel present during the August 8th hearing attempted to correct the Bankruptcy Court's plainly erroneous description of the tentative settlement that had been proposed by counsel for the Soundview Elite Trustee.

Third, the Bankruptcy Court stated that the supposedly-existing "restraints" on Composite's Cash Funds had been based upon "consensual agreements" that existed prior to the

---

[19]     Adversary Proceeding, Docket No. 28, pp. 33-34.

[20]     Adversary Proceeding, Docket No. 28, p. 38 (emphasis added).

[21]     Adversary Proceeding, Docket No. 28, p. 39.

time that Composite's Then-Counsel appeared at the April 15th hearing.[22]  The Bankruptcy Court then stated that those "consensual agreements" that pre-dated the April 15th hearing had somehow provided a factual/legal basis for continuing the "restraints" from April 15th until the August 8th hearing even though the Bankruptcy Court had expressly acknowledged at the April 15th hearing that the Bankruptcy Court could not impose any "restraints" prior to a motion for such restraints by the Soundview Elite Trustee.

Fourth, even though the Soundview Elite Trustee still had not filed a motion for a TRO, the Bankruptcy Court, *sua sponte*, made findings during the August 8th status conference concerning the Soundview Elite Trustee's likelihood of success on the merits of the underlying claims and stated that such findings constituted a basis for continuing the "restraints" on Composite's Cash Funds.[23]  While announcing those "findings", the Bankruptcy Court also stated that such "restraints" would remain in place indefinitely and at least until the Bankruptcy Court heard the motion for a preliminary injunction that had not yet been filed by the Soundview Elite Trustee.[24]

F.      The September 3rd Conference And The September 23rd Order

Following the August 8th telephonic status conference, Soundview Composite instructed Wilmington Trust to transfer $100,000 to a bank account in the name of Richcourt, which then acted as Soundview Composite's agent in connection with the disbursement of those funds. During mid-August 2014, the working relationship between Soundview Composite and Composite's Then-Counsel became strained for various reasons and Soundview Composite did

---

[22]      Adversary Proceeding, Docket No. 28, p. 34.

[23]      Adversary Proceeding, Docket No. 28, pp. 35-36.

[24]      Adversary Proceeding, Docket No. 28, pp. 39-40.

not make the $50,000 payment of legal fees to Composite's Then-Counsel that had been discussed during the August 8th conference.

On August 26, 2014, Composite's Then-Counsel sent a letter to the Bankruptcy Court in which he requested that the Bankruptcy Court schedule a status conference concerning a prospective motion by Composite's Then-Counsel for an order: (i) allowing Composite's Then-Counsel to withdraw from representation of Soundview Composite; (ii) requiring Soundview Composite to pay Composite's Then-Counsel the sum of $50,000; and (iii) requiring Soundview Composite to return to Wilmington Trust any portion of the $100,000 that had been received from Wilmington Trust and had not been used to pay legal fees.[25]  In response to the August 26th letter, the Bankruptcy Court scheduled the requested status conference for September 3, 2014.[26]

On September 2, 2014, Fletcher, in his capacity as a Director of Composite and without assistance from Composite's Then-Counsel, filed a letter with the Bankruptcy Court that provided three pieces of information relevant to the August 26th letter submitted by Composite's Then-Counsel.[27]  First, Fletcher confirmed that a portion of the funds received by Soundview Composite had been used to retain legal counsel.  Second, Fletcher disclosed that Soundview Composite had requested that Composite's Then-Counsel seek clarification of the Bankruptcy Court's rulings issued at the August 8th conference.  Third, Fletcher noted that the August 26th letter had been used by Composite's Then-Counsel as a part of an attempt to coerce payment of $50,000 in legal fees to Composite's Then-Counsel.  Prior to the conference on September 3rd, Composite's Then-Counsel filed a new letter with the Bankruptcy Court in which Composite's

---

[25]     Adversary Proceeding, Docket No. 29.

[26]     Adversary Proceeding, Docket No. 31.

[27]     Adversary Proceeding, Docket No. 34.

Then-Counsel disclosed to the Bankruptcy Court confidential attorney-client communications and settlement discussions that had occurred between counsel for parties during August 2014.[28]

Fletcher participated in the September 3rd conference by telephone in his capacity as a Director of Soundview Composite.  Fletcher is not an attorney.  Under Bankruptcy Court rules, could not represent Soundview Composite in the Bankruptcy Court.  During the conference, however, the Bankruptcy Court cross-examined Fletcher concerning the disposition of the $100,000 from Composite's Cash Funds that had been received by Soundview Composite from Wilmington Trust in August 2014.[29]  When the Bankruptcy Court was unsatisfied with the information provided by Fletcher, the Bankruptcy Court, *sua sponte*, ordered Fletcher to produce certain information regarding the disposition of the $100,000 in funds within one day.[30]  At that time, Fletcher was not a party to any proceeding relating to Soundview Elite in the Bankruptcy Court and no party had sought such information from Fletcher, Richcourt or Soundview Composite via motion or subpoena in the adversary proceeding commenced by the Soundview Elite Trustee.

During the September 3rd court conference, Composite's Then-Counsel disclosed additional confidential attorney-client communications and additional confidential settlement discussions.  Fletcher objected orally to the disclosure of these confidential communications and the Bankruptcy Court ruled instantly that Soundview Composite had waived its attorney-client privilege concerning all communications with Composite's Then-Counsel because Soundview Composite had disputed the amount of fees owed to Composite's Then-Counsel and had

---

[28]     Adversary Proceeding, Docket No. 33.

[29]     Adversary Proceeding, Docket No. 35, pp. 36-39.

[30]     Adversary Proceeding, Docket No. 35, pp. 40, 44-45.

disclosed its prior request that Composite's Then-Counsel seek clarification of the Bankruptcy Court's August 8th rulings.[31]  The Bankruptcy Court issued that ruling without providing Soundview Composite with any opportunity to brief the issues relating to the alleged waiver.

At the end of the September 3rd conference, the Bankruptcy Court "granted" the "motion" of Composite's Then-Counsel even though no notice of motion had been filed with the Bankruptcy Court and Soundview Composite had not been given any meaningful opportunity to oppose the relief sought by Composite's Then-Counsel.  Specifically, the Bankruptcy Court allowed Composite's Then-Counsel to withdraw from representation of Soundview composite, ordered Soundview Composite to pay Composite's Then-Counsel's legal fees in amount still-to-be-determined based on a further submission by Composite's Then-Counsel, and ordered Soundview Composite to return to Wilmington Trust any portion of the $100,000 received from Wilmington Trust in August 2014 that was not used to pay legal fees.[32]  The Bankruptcy Court stated that

> "[T]here was nothing ambiguous, whatever, with respect to my order, as set forth on pages 38 and 39 of the transcript [of the August 8th conference] . . .  If anything was clear from that ruling, and I think it was totally clear, it was that the money could be used for only two purposes: 1) to pay Mr. Levine's fees; and 2) to pay a retainer on account of services to the Tremonte firm, for the purpose of addressing the SEC's regulatory needs and responding to its subpoena."[33]

The Bankruptcy Court then repeated its prior mischaracterization of the tentative settlement proposed by counsel for the Soundview Elite Trustee at the August 8th conference as a "limited consent" to release of $100,000 from Composite's Cash Funds for only two purposes.[34]

---

[31]     Adversary Proceeding, Docket No. 35, pp. 6-7, 51-52.

[32]     Adversary Proceeding, Docket No. 35, p. 46.

[33]     Adversary Proceeding, Docket No. 35, pp. 46-47.

[34]     Adversary Proceeding, Docket No. 35, pp. 48-49.

The Bankruptcy Court also purported to make "findings" concerning the quality of legal services provided by Composite's Then-Counsel without, once again, providing any prior notice to Soundview Composite.[35]  The Bankruptcy Court concluded the September 3rd conference by asking Composite's Then-Counsel to be "a mensch" and draft a proposed written order embodying the Bankruptcy Court's rulings that day without charging Soundview Composite for such services.[36]

On September 4, 2014, Fletcher complied with the Bankruptcy Court's *sua sponte* order that required Fletcher to disclose certain information regarding the use of the $100,000 that had been received from Wilmington Trust.  In response to that information, counsel for the Soundview Elite Trustee immediately requested via letter that Fletcher disclose additional information and documents regarding the transactions disclosed by Fletcher.  Counsel for the Soundview Elite Trustee did not seek such documents or information via a discovery request or subpoena in the pending adversary proceeding between Soundview Elite and Soundview Composite.

On September 8, 2014, Composite's Then-Counsel filed a Notice of Settlement with supporting documents concerning the Bankruptcy Court's rulings made at the September 3rd conference.[37]  In addition to documenting the Bankruptcy Court's rulings at the September 3rd conference and quantifying the legal fees demanded by Composite's Then-Counsel, the proposed order also included a completely new paragraph that required Fletcher and Richcourt to disclose the additional information that had been sought by counsel for the Soundview Elite Trustee via

---

[35]     Adversary Proceeding, Docket No. 35, p. 51.

[36]     Adversary Proceeding, Docket No. 35, p. 56.
[37]     Adversary Proceeding, Docket No. 36.

letter after the September 3rd conference.  Fletcher requested additional time to obtain new counsel for Soundview Composite and to respond to the proposed order and the Bankruptcy Court denied that request.[38]

On September 23, 2014, the Bankruptcy Court executed the proposed order that had been submitted by Composite's Then-Counsel without making any changes to the proposed order.[39] Three days later, on September 26, 2014, Fletcher filed a *pro se* appeal from the September 23rd Order.[40]

---

[38]     Adversary Proceeding, Docket No. 40.

[39]     Adversary Proceeding, Docket No. 46.

[40]     Adversary Proceeding, Docket No. 50.

## ARGUMENT

### I.

#### The Bankruptcy Court Erroneously Ordered
#### "Restraints" On Composite's Cash Funds

The September 23rd Order is largely premised on the Bankruptcy Court's erroneous determination during the August 8th conference that "restraints" had previously been imposed by the Bankruptcy Court against Composite's Cash Funds and that such "restraints" could be continued indefinitely pending a motion for such "restraints" by the Soundview Elite Trustee. In fact, as noted above, the Bankruptcy Court itself had acknowledged during the April 15th conference that the Bankruptcy Court was powerless to issue any such "restraints" in the absence of a motion for a TRO and preliminary injunction by the Soundview Elite Trustee. No such motion had been filed as of the August 8th conference.

Rule 7065 of the Federal Rules of Bankruptcy Procedure provides that Rule 65 of the Federal Rules of Civil Procedure shall apply, in all relevant parts, to any motion by the Soundview Elite Trustee to restrain, either temporarily or preliminarily, Composite's Cash Funds. Rule 65 generally requires advance notice to the adverse party concerning such a motion for a TRO or preliminary injunction. In the absence of such a motion, there was simply no legal basis for the Bankruptcy Court to impose any "restraints" on Composite's Cash Funds, as the Bankruptcy Court purported to do during the August 8th conference. Nor was it proper for the Bankruptcy Court to make "findings" concerning the Soundview Elite Trustee's likelihood of success on the merits during the August 8th conference.

Moreover, even if the Soundview Elite Trustee had sought such relief via motion, it would have been error for the Bankruptcy Court to grant such relief. In *Grupo Mexicano de Desarollo, S.A. v. Alliance Bond Fund, Inc.*, 527 U.S. 308, 119 S. Ct. 1961 (1999), the United

States Supreme Court held that unsecured creditors could <u>not</u> obtain restraints upon the property

of a debtor prior to obtaining a judgment on the amount due to the creditor.  527 U.S. at 330-33,

119 S. Ct. at 1973-76.  Here, Soundview Elite may become an unsecured creditor of Soundview

Composite <u>if</u> it can establish that Soundview Elite has submitted a proper request to redeem its

Class H securities and Soundview Composite has failed to respond to that redemption request in

a manner authorized by the governing documents.  Pending a judicial determination of those

issues, there is simply no legal basis for an *a priori* restraint on Composite's Cash Funds.

II.

The Bankruptcy Court Erroneously Issued Rulings Without Sufficient Prior<br>Notice Concerning The Alleged Waiver Of The Attorney-Client<br><u>Privilege, The Payment Of Legal Fees and The Quality Of Legal Services</u>

The United States Supreme Court has repeatedly held that "[t]he fundamental

requirement of due process is the opportunity to be heard 'at a meaningful time and in a

meaningful manner.'"  *Kaley v. United States*, 134 S. Ct. 1090, 1114 (2014) (*quoting Matthews v.

Eldridge*, 424 U.S. 319, 333 (1976)); *see also LaChance v. Erickson*, 522 U.S. 262, 266 (1995)

("The core of due process is the right to notice and a meaningful opportunity to be heard.").

Though the Supreme Court has not precisely defined what makes an opportunity to be heard

"meaningful," the Supreme Court has stated that "[t]he opportunity to present reasons, either in

person or in writing, why proposed action should not be taken is a fundamental due process

requirement."  *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 546 (1985) (emphasis

added).  *See also Lugo v. Keane*, 15 F.3d 29, 30 (2d Cir. 1994) ("No principle is more

fundamental to our system of judicial administration than that a person is entitled to notice

before adverse judicial action is taken against him.")

Here, in late August 2014, Composite's Then-Counsel, via letter, sought a conference

before the Bankruptcy Court concerning a prospective motion for various forms of relief,

17

including an order allowing his withdrawal as counsel for Soundview Composite in the adversary proceeding.  The Bankruptcy Court scheduled a conference on September 3rd to discuss that letter.  Prior to that conference, Composite's Then-Counsel did not file any notice of motion or supporting motion papers concerning the items discussed in his letter.

At the September 3rd conference, the Bankruptcy Court issued rulings concerning: (a) Soundview Composite's right to maintain the confidentiality of attorney-client communications with Composite's Then-Counsel; (b) the amount of legal fees that Soundview Composite should pay to Composite's Then-Counsel; and (c) the alleged quality of the legal services provided by Composite's Then-Counsel.  The Bankruptcy Court issued those rulings on September 3rd (all of which were also included in the September 23rd Order) without providing Soundview Composite, *which was represented at the September 3rd conference by Composite's Then-Attorney*, with a meaningful opportunity to contest those prospective rulings.

Had the Bankruptcy Court required Composite's Then-Counsel to proceed by notice of motion, Soundview Composite could have raised such fundamental issues as: (i) whether or not a full waiver of the attorney-client privilege was mandated by either: (a) Fletcher's disclosure of one client request to Composite's Then-Counsel; or (b) the fee dispute that had arisen with Composite's Then-Counsel; and (ii) whether or not the Bankruptcy Court possessed some form of ancillary jurisdiction to adjudicate the fee dispute that existed between Soundview Composite and Composite's Then-Counsel in connection with the adversary proceeding commenced by Soundview Elite against Soundview Composite.  To the extent that the Bankruptcy Court was the proper forum to adjudicate the fee dispute between Soundview Composite and Composite's

Then-Counsel, that adjudication would have required more than the notice-free, snap judgment made by the Bankruptcy Court during the September 3rd conference.[41]

III.

The September 23rd Order Erroneously Required Fletcher and Richcourt<br>To Produce Documents and Information Without Any Prior Notice,<br><u>Motion or Ruling On Any Request For Such Documents and Information</u>

Paragraph 9 of the September 23rd Order ordered Fletcher and Richcourt to produce certain documents and information that had been requested by counsel for the Soundview Elite Trustee via letter to Fletcher <u>after</u> the September 3rd hearing.  September 23rd Order, pp. 11-12. Prior to the September 23rd Order, counsel for the Soundview Elite Trustee had not sought such information via discovery notice or subpoena in the pending adversary proceeding.  Nor had counsel for the Soundview Elite Trustee filed any motion to compel the production of such documents and information from Fletcher and Richcourt, neither of whom were parties to the adversary proceeding commenced by the Soundview Elite Trustee against Soundview Composite. Instead, the September 23rd Order merely noted that the Soundview Elite Trustee had "objected" to certain information provided by Fletcher and had "requested" that Fletcher provide "additional supporting information."  September 23rd Order, p. 3.

As noted above in Point II, the Supreme Court has repeatedly held that due process requires that a person be given the opportunity to be heard before the entry of an order adversely affecting the interests of that person.  The Bankruptcy Court's stated purpose in requesting Composite's Then-Counsel to draft an order and file notice of settlement of such an order was to document further the rulings issued by the Bankruptcy Court during the September 3rd

---

[41]    The Bankruptcy Court made the rulings regarding Composite's Then-Counsel despite the fact that Composite's Then-Counsel disclosed during the September 3rd conference that Soundview Composite had already commenced a confidential, non-public mediation proceeding concerning the dispute that had arisen between Soundview Composite and Composite's Then-Counsel.

conference.  At the September 3rd conference, the Bankruptcy Court issued a *sua sponte* order that compelled Fletcher to produce certain information regarding banking transactions within one day and Fletcher complied with that order even though Fletcher was not a party to the underlying adversary proceeding.  The Bankruptcy Court did not order Fletcher or Richcourt during the September 3rd conference to produce the documents and information described in paragraph 9 of the September 23rd Order.  By including this new provision into the September 23rd Order, the Bankruptcy Court deprived Fletcher and Richcourt of any meaningful opportunity to be heard concerning the requirements imposed upon them by Paragraph 9.

## CONCLUSION

For the reasons set forth above, the September 23rd Order should be reversed in its entirety, other than the portion of that order that provided for the withdrawal of Composite's Then-Counsel from representation of Soundview Composite in the underlying adversary proceeding.

Dated: New York, New York
   December 1, 2014

         SHER TREMONTE LLP

         By: /s/ Robert Knuts
           Robert Knuts

         80 Broad Street, Suite 1301
         New York, NY 10004
         (212) 202-2638
         (212) 202-4156 (fax)
         rknuts@shertremonte.com

         *Attorneys for Appellant*