USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 5/8/2015

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
In re SOUND VIEW ELITE LTD., *et al.*,      :
                                             :
                              Debtors.       :
                                             :         1:14-cv-8615-GHW
_____  :
                                             :         MEMORANDUM OPINION
ALPHONSE FLETCHER, JR.,                      :               AND ORDER
                                             :
                              Appellant,     :
                                             :
                 -against-                   :
                                             :
CORINNE BALL, as Chapter 11 Trustee of       :
SOUNDVIEW ELITE, LTD.,                       :
                                             :
                              Appellee.      :
-------------------------------------------------------------------X

GREGORY H. WOODS, United States District Judge:

Appellant Alphonse Fletcher, Jr. appeals from a September 23, 2014 order of the bankruptcy court that, in relevant part (1) awarded attorney's fees to Peter M. Levine, then counsel for Soundview Composite Ltd. ("Soundview Composite"), an investment company owned and controlled by Fletcher; (2) found that Soundview Composite had waived the attorney-client privilege; (3) preserved certain restraints on Soundview Composite's bank account; and (4) ordered Fletcher or Richcourt USA, Inc. ("Richcourt") to provide certain information regarding disbursements made from Soundview Composite's bank account. The Court holds that Fletcher lacks standing to appeal the challenged portions of the bankruptcy court's order. Accordingly, the appeal is dismissed.

**I.    Background[1]**

    **A.    Bankruptcy Court Proceedings**

---

[1] The facts summarized below are predominately limited to those necessary to decide the instant appeal.

In September 2013, Soundview Elite, Ltd. ("Soundview Elite"), an investment company, filed for bankruptcy under Chapter 11. *See* S.D.N.Y. Bankr. No. 13-13098, Dkt. No. 1. On April 1, 2014, Corinne Ball, Soundview Elite's bankruptcy trustee (the "Trustee"), commenced an adversary proceeding against Soundview Composite. The Trustee alleged that Soundview Elite had invested $12.87 million to acquire 100% of the non-voting shares of Soundview Composite, that Soundview Elite had requested the redemption of those shares, and that Soundview Composite had failed to honor that request. The Trustee sought the turnover of approximately $3.8 million that Soundview Composite held in an account at Wilmington Trust (the "Wilmington Trust Account") in order to partially recover the amount allegedly owed by Soundview Composite. Although not named as a defendant, Fletcher was implicated by the Trustee's allegations by virtue of owning and controlling Soundview Composite, at least indirectly through his ownership and control of the entities Soundview Capital Management and Fletcher Asset Management. As of September 2012, Fletcher was also a director of all three Soundview entities. *See* S.D.N.Y. Bankr. No. 14-1923 ("Adv."), Dkt. No. 1.

The Trustee subsequently filed a motion for summary judgment, which was opposed by Soundview Composite and remains pending before the bankruptcy court as of the date of this decision. *See* Adv. Dkt. Nos. 11-14, 19-21

On August 5, 2014, Levine, then counsel for Soundview Composite, filed a letter in which he requested that the court hold a conference to discuss the disbursement of funds from the Wilmington Trust Account. According to Levine, such a conference was necessary because the funds in the Wilmington Trust Account had previously been frozen by the bankruptcy court.[2] Levine specifically sought the disbursement of $50,000 to himself as payment for outstanding

---

[2] Fletcher brought the instant appeal principally as a challenge to the validity of the bankruptcy court's restraints on the funds in the Wilmington Trust Account. Because the Court concludes that Fletcher lacks standing to raise such a challenge, it need not reach the merits.

attorney's fees owed by Soundview Composite and as a retainer for future fees; and $50,000 to the law firm Sher Tremonte LLC ("Sher Tremonte") as a retainer for representing Soundview Capital Management in a related SEC investigation.  *See* Adv. Dkt. No. 25.

On August 8, 2014, the bankruptcy court held a conference to address the issues raised in Levine's letter.  Fletcher appeared at the conference by telephone.  The bankruptcy court confirmed that it had frozen the funds in the Wilmington Trust Account pursuant to certain "consensual agreements," but also stated that it would entertain a formal motion by the Trustee for a preliminary injunction with the same effect.[3]  Adv. Dkt. No. 28 at 34.  The bankruptcy court ultimately authorized the $100,000 in disbursements requested by Levine while reiterating that its restraints on the funds in the Account otherwise remained in place.  *Id.* at 38-40.

On August 26, 2014, Levine filed a letter stating that $100,000 had been wired from the Wilmington Trust Account to an account owned by Richcourt, another entity owned and controlled by Fletcher; that he had not been paid out of the released funds; and that there was no indication that Sher Tremonte had been paid out of the released funds.  Based on correspondence with his client, Levine concluded that he would not be paid without court intervention and requested an order relieving him as counsel for Soundview Composite, directing Soundview Composite or Richcourt to pay him $50,000, and directing Soundview Composite to either return the balance of the released funds to the Wilmington Trust Account or to use it to retain SEC counsel.  *See* Adv. Dkt. No. 29.

On September 3, 2014, Fletcher filed a letter in which he indicated that Sher Tremonte had, in fact, been retained in connection with the SEC investigation.  Additionally, in the letter, Fletcher disclosed portions of two emails that he had exchanged with Levine regarding attorney's fees for representing Soundview Composite.  *See* Adv. Dkt. No. 34.

---

[3] The Trustee filed a motion for a preliminary injunction in December 2014, *see* Adv. Dkt. Nos. 73-75, which was fully submitted and pending before the bankruptcy court as of the date of this decision.

In a responsive letter filed on the same day, Levine asserted that Fletcher had waived the attorney-client privilege with respect to the subject matter of the partially disclosed emails. Citing the "rule of completeness," Levine disclosed both of the emails at issue in their entirety, as well as the email thread that preceded them. *See* Adv. Dkt. No. 33.

That same day, the bankruptcy court held a conference to discuss the issues raised in the above letters. As to the purported waiver of the attorney-client privilege, Levine informed the court that, in addition to partially disclosing certain emails, Fletcher had filed on behalf of Soundview Composite a Client Request for Fee Arbitration with the New York County Lawyers' Association accusing Levine of disregarding Soundview Composite's instructions and making unreasonable demands. Levine argued that Soundview Composite had thereby waived the attorney-client privilege in all respects, and not solely with respect to the subject matter of the disclosed emails. The bankruptcy court agreed and ruled that the attorney-client privilege between Levine and Soundview Composite had been waived. *See* Adv. Dkt. No. 35 at 51-52.

Regarding the funds in the Wilmington Trust Account, Fletcher admitted that a substantial portion of the $100,000 disbursed from that Account had been used to pay himself and his associates personally for various "directors' fees, accountings fees, and other ordinary expenses of the Soundview Richcourt group." *Id.* at 39-40. Concluding that Fletcher had thereby failed to abide by the restraints on the funds in the Account, the court ordered Fletcher to provide to all parties an accounting of the disposition of the money that had been transferred from the Wilmington Trust Account to Richcourt. *Id.* at 40. Additionally, the court ordered Richcourt to return to the Wilmington Trust Account all funds that had not been used to retain Sher Tremonte, ordered Soundview Composite to pay Levine's outstanding attorney's fees, and granted Levine's request to withdraw as counsel for Soundview Composite. *Id.* at 46.

On September 4, 2014, Fletcher sent the parties a purported accounting that failed to specifically identify the recipients of the funds disbursed from the Wilmington Trust Account or the purposes for which the funds were disbursed.  *See* Adv. Dkt. No. 36-4.

On September 23, 2014, the bankruptcy court issued a written order that, for the most part, memorialized and supplemented the rulings it had made at the September 3 conference.  Specifically, the court (1) found that Soundview Composite had partially waived the attorney-client privilege "though Fletcher's September 2 disclosure to the Court of privileged communications with Levine," and had completely waived the attorney-client privilege by commencing arbitration that "attack[ed] the quality of the representation and the value of the services Levine provided to [Soundview Composite]"; (2) found that Levine's representation of Soundview Composite was "superb"; (3) granted Levine's motion to withdraw as counsel for Soundview Composite; (4) ordered Soundview Composite or Richcourt to pay $50,000 to Levine within two days, which represented the lodestar amount of $49,614 for the services he had provided through September 3, 2014, "plus $386 as partial reimbursement of the disbursements [Levine] made on behalf of [Soundview Composite]"; (5) ordered Soundview Composite or Richcourt to provide objective evidence of the payment used to retain Sher Tremonte within two days and to return to the Wilmington Trust Account "the difference between $50,000 and the amount of the actual payment to [Sher Tremonte] as shown by the objective evidence"; (6) preserved the existing restraints on the funds in the Wilmington Trust Account pending adjudication of a formal motion for a preliminary injunction; (7) preserved the Trustee's right to seek recovery from each recipient of the $100,000 that had been disbursed from the Wilmington Trust Account other than Levine and Sher Tremonte, and ordered that "to the extent such recovery is not achieved, then any claims such recipients may have against [Soundview Composite] shall be reduced by the amount not recovered"; and (8) ordered Richcourt or Fletcher to supplement the accounting provided on September 4, 2014 with more specific information regarding the disbursements made from the Wilmington Trust Account.  *See* Adv. Dkt. No. 46.

Fletcher timely appealed from the bankruptcy court's September 23 order, resulting in the instant proceedings.[4]  *See* Adv. Dkt. No. 50.

### B. Arguments on Appeal

In his brief, Fletcher, through counsel, argues that the bankruptcy court (1) erroneously retrained the funds of Soundview Composite in the Wilmington Trust Account; (2) erroneously issued rulings without sufficient prior notice concerning Soundview Composite's waiver of the attorney-client privilege, the amount of legal fees owed by Soundview Composite, and the quality of Levine's representation of Soundview Composite; and (3) erroneously ordered Fletcher or Richcourt to provide information regarding the disbursements made from the Wilmington Trust Account.  *See* Dkt. No. 8.

In her brief, the Trustee argues, *inter alia*, that Fletcher lacks standing to appeal the bankruptcy court's September 23 order.  *See* Dkt. No. 11.  Levine has filed a brief as an interested non-party raising the same argument.  *See* Dkt. No. 12.

## II. Discussion

"[T]he question of standing is whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues." *Warth v. Seldin*, 422 U.S. 490, 498 (1975).  "In order for appellants to maintain [an] appeal[,] the requirements of Article III of the Constitution as well as

---

[4] On the same day that Fletcher commenced this appeal, the Trustee moved for an order holding Soundview Composite, Richcourt, and Fletcher, among others, in contempt of the bankruptcy court's September 23 order.  *See* Adv. Dkt. Nos. 47-49.  Several weeks later, Levine was paid $50,000 for the services he rendered to Soundview Composite and the funds that had been disbursed from the Wilmington Trust Account without authorization were returned to the Account.  *See* Adv. Dkt. Nos. 65, 69.  Additionally, Richcourt and Fletcher eventually provided a more detailed accounting of the disbursed funds, which confirmed that they had been used to pay various fees to Fletcher and his associates and attorney, to post bonds in a separate appeal in this Court, and to pay debts owed by other entities owned by Fletcher.  *See* Adv. Dkt. No. 75, Ex. V.  The bankruptcy court ultimately held Soundview Composite, Richcourt, Fletcher, and others in contempt of its rulings during a November 5, 2014 hearing.  *See* Adv. Dkt. No. 69.  According to the Trustee, however, the bankruptcy court intends to but has not yet issued a final written order of contempt.  *See* Dkt. No. 11 at 15-16; *see also* Adv. Dkt. Nos. 70, 77 (proposed orders).

On November 12, 2014, Fletcher filed a letter in this Court requesting a consolidated briefing schedule in this appeal and in an anticipated appeal from the bankruptcy court's anticipated written order of contempt.  *See* Dkt. No. 6.  The Court implicitly denied this request without prejudice to renewal "if and when a related appeal is filed." Dkt. No. 7.  No other appeal has since been filed in the adversary proceedings or brought to the attention of the Court.

judicially imposed prudential requirements must be satisfied." *Application of Dow Jones & Co., Inc.*, 842 F.2d 603, 606 (2d Cir. 1988); *see also In re Grand Jury*, 111 F.3d 1066, 1071 (3d Cir. 1997) ("The same constitutional minima for standing to sue are also required for standing to appeal."). To establish Article III standing, a party must show, *inter alia*, that he has suffered an "injury in fact" that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." *Pac. Capital Bank, N.A. v. Connecticut*, 542 F.3d 341, 350 (2d Cir. 2008) (internal quotation marks omitted). Prudential standing includes the requirement that a party "generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties." *Warth*, 422 U.S. at 499.

In addition to satisfying the requirements imposed by Article III of the Constitution, an appellant in a bankruptcy case generally must be "a person aggrieved—a person directly and adversely affected pecuniarily by the challenged order of the bankruptcy court." *In re DBSD N. Am., Inc.*, 634 F.3d 79, 89 (2d Cir. 2011). Thus, an appellant in a bankruptcy case "must show not only 'injury in fact' under Article III but also that the injury is 'direct[ ]' and 'financial.'" *Id*. The "stringency" of this test "is rooted in a concern that freely granting open-ended appeals to those persons affected by bankruptcy court orders will sound the death knell of the orderly disposition of bankruptcy matters." *In re Barnet*, 737 F.3d 238, 242 (2d Cir. 2013) (internal quotation marks omitted); *see also In re Colony Hill Associates*, 111 F.3d 269, 273 (2d Cir. 1997) ("This standard reflect[s] the understandable concern that if appellate standing is not limited, bankruptcy litigation will become mired in endless appeals brought by the myriad of parties who are indirectly affected by every bankruptcy court order." (internal quotation marks omitted)). As an exception to the above general rule, "even absent a direct pecuniary interest in the litigation, a public interest may also give a sufficient stake in the outcome of a bankruptcy case to confer appellate standing." *In re Zarnel*, 619 F.3d 156, 162 (2d Cir. 2010); *see id.* (finding that the U.S. Trustee's "responsibility to represent and protect the public interest affords it a substantial interest in, and therefore standing to proceed with"

an appeal). The appellant bears the burden of demonstrating that he has standing to appeal. *In re Osborne*, No. 13-CV-8211 CS, 2014 WL 2738558, at *3 (S.D.N.Y. June 17, 2014).

Here, Fletcher has not demonstrated that he has standing to appeal the challenged portions of the bankruptcy court's September 23, 2014 order. Fletcher does not have standing in his capacity as owner and co-director of Soundview Composite to challenge the bankruptcy court's restraints on the funds in Soundview Composite's bank account (the Wilmington Trust Account) or the bankruptcy court's findings as to Soundview Composite's waiver of the attorney client-privilege, the amount of attorney's fees owed by Soundview Composite, or the quality of Levine's representation of Soundview Composite. *Cf. Rand v. Birbrower, Montalbano, Condon & Frank, P.C.*, 149 F. Supp. 2d 96, 99 (S.D.N.Y. 2001) ("[O]fficers, directors and shareholders of a corporation . . . do not possess the requisite privity of contract that allows them to bring suit in their own names and on their own behalf for a wrong allegedly done to the corporation." (citing *Green v. Victor Talking Machine Co.*, 24 F.2d 378, 380 (2d Cir. 1928)). To the extent that any person or entity was "directly and adversely affected pecuniarily" by these rulings, it was Soundview Composite, not Fletcher. Indeed, with the exception of Soundview Composite's waiver of the attorney-client privilege, which is discussed below, Fletcher does not argue otherwise on appeal.

Similarly, Fletcher does not argue that he has standing the appeal bankruptcy court's order that he or Richcourt provide additional information regarding the disbursement's made from the Wilmington Trust Account. Nor would any such argument have merit, as this order did not have a direct and adverse pecuniary effect on Fletcher. Furthermore, this order was simply a means of enforcing the restraints on the Wilmington Trust Account, which, as noted, Fletcher lacks standing to appeal.

In his reply brief, Fletcher contends that he has standing to appeal the following portion of the bankruptcy court's September 23 order: "The Trustee's right to seek recovery from each recipient of funds from the $100,000 distribution authorized by the Court (other than Levine and

8

the Scher Tremonte firm) is preserved, and to the extent such recovery is not achieved, then any claims such recipients may have against [Soundview] Composite shall be reduced by the amount not recovered." Adv. Dkt. No. 46 at ¶ 8; Dkt. No. 14 at 2-3.  According to Fletcher, this portion of the order had a direct and adverse pecuniary effect on him both because he was a recipient of the funds at issue and because he "had claims against Soundview Composite for, *inter alia*, 'director fees' and 'consulting fees.'" Dkt. No. 14 at 2-3.  Fletcher, however, has not directly challenged the merits of this portion of the bankruptcy court's order in his brief.  The question of whether he has standing to raise such a challenge is therefore moot.

In any event, even if Fletcher's arguments on appeal indirectly implicate the merits of the above order, he does not have standing to raise such arguments.  Under Article III's more lenient "case or controversy" requirement, Fletcher has not demonstrated any actual or imminent harm in connection with the bankruptcy court's order preserving the Trustee's right to seek recovery from recipients of the funds at issue and authorizing the court to reduce any claims that such recipients may have against Soundview Composite.  Fletcher contends that, "[u]nder the [above portion of the] September 23 Order, if Soundview Composite did not repay the distributed funds to the Wilmington Trust Account and the Trustee could not recover them from their recipients, Fletcher's claims for director and consulting fees would be reduced." Dkt. No. 14 at 3.  But this contention is not merely "conjectural or hypothetical;" it is counterfactual.  The disbursed funds at issue were either paid to Levine and Sher Tremonte or returned to the Wilmington Trust Account, and thus the Trustee did not seek their recovery from Fletcher and the bankruptcy court did not reduce any of Fletcher's claims. *See* Adv. Dkt. Nos. 65, 69.

Finally, Fletcher argues that he has standing to appeal the bankruptcy court's determination that Soundview Composite waived the attorney-client privilege.  In support, Fletcher asserts that he is the person who allegedly caused Soundview Composite to waive the attorney-client privilege, and that he is protecting the public's interest in enforcing that privilege. *See* Dkt. No. 14 at 3-4.  This

argument is unavailing.  The Court allows that appealing a purported waiver of the attorney-client privilege in a bankruptcy case may not require a showing of pecuniary harm.  But the attorney-client privilege "belongs solely to the client," *In re von Bulow*, 828 F.2d 94, 100 (2d Cir. 1987), which, in this case, is Soundview Composite, not Fletcher.  Thus, the Court questions the premise that the public has an interest in maintaining a privilege that belongs solely to a particular client.  In any event, to the extent appellate standing could be conferred by a duty to protect a public interest in enforcing the attorney-client privilege, that duty would lie solely with Soundview Composite.  As already indicated, Fletcher is not an authorized legal representative of Soundview Composite in these proceedings.  He thus lacks standing to seek to enforce a privilege of Soundview Composite on appeal.

### III.   Conclusion

For the foregoing reasons, Fletcher has not demonstrated that he has standing to appeal the bankruptcy court's September 23, 2014 order, and his appeal is dismissed.[5]  The Clerk of Court is instructed to enter judgment accordingly and to close the case.

SO ORDERED.

Dated:  May 8, 2015  
New York, New York

GREGORY H. WOODS  
United States District Judge

---

[5] In her brief, the Trustee requests an award of attorney's fees and expenses incurred by her counsel in defending this appeal.  *See* Dkt. No. 11 at 25.  Federal Rule of Bankruptcy Procedure 8020 permits a district court to award attorney's fees and costs to the appellee in a bankruptcy appeal only as a form of sanctions where the court determines that the appeal is frivolous.  *See* Fed. R. Bankr. P. 8020(a); *In re Carlton Concrete Corp.*, No. 08-CV-242 (JFB), 2008 WL 4443233, at *11 n.9 (E.D.N.Y. Sept. 26, 2008).  Although Fletcher's arguments as to why he has standing to litigate this appeal are admittedly lacking, the Court cannot conclude that the appeal is frivolous.  *See In re Carlton Concrete Corp.*, 2008 WL 4443233, at *11 n.9 ("Sanctions may be imposed [under Rule 8020] when one party proceeds with an argument totally lacking in merit, framed with no relevant supporting law, conclusory in nature, and utterly unsupported by the evidence." (internal quotation marks omitted)).  Accordingly, the Trustee's request for an award of attorney's fees and costs is denied.